600 A.2d 1297

COMMONWEALTH of Pennsylvania, Appellant,

v.

Michael A. MERKT.

Superior Court of Pennsylvania.

Argued Nov. 19, 1991.

Filed Jan. 7, 1992.

Kemal A. Mericli, Asst. Dist. Atty., Pittsburgh, for Com., appellant.

Richard J. Catalano, Pittsburgh, for appellee.

Before BECK, TAMILIA and HESTER, JJ.

TAMILIA, Judge:

The Commonwealth appeals the trial court's August 9, 1990 Order granting appellee's motion to suppress the firearm discovered in appellee's vehicle.

On August 29, 1988 at approximately 1:25 a.m., Wilkins Township police pursued appellee, Michael A. Merkt, for not paying for gasoline he pumped at a gas station. Because appellee did not stop in response to police sirens and lights, he was eventually forced off the road by two police cars.

The officers approached appellee's car with flashlights, Officer Guthrie ordered appellee out of the car and Officer DeMarco handcuffed appellee and placed him under arrest. At the suppression hearing, Officer Guthrie testified he looked through one of the car windows with a flashlight and observed the butt of a gun lying on the floor of the driver's side. He could not recall whether the car door was open or closed at that time. To the contrary appellee testified the officer entered his vehicle and conducted a search until he happened upon the weapon. In describing the manner in which the search was conducted, appellee stated Officer Guthrie, after shining the flashlight around the seat and floors, seemed to go right to where the gun was and pull it out as if he knew it was there from the beginning.

The trial court suppressed the gun as fruit of an illegal search, in that the weapon was not in plain view and no probable cause existed to conduct a warrantless search of the car. The court reasoned the record indicated the weapon was not in plain view due to the officer's use of a flashlight in looking into the car.

The Commonwealth argues the gun was in plain view and the fact the officer needed to use a flashlight to see inside the car does not make improper that which would have been proper during daylight hours.

Appellee counters the plain view doctrine is inapplicable to the present case because of the suppression court's factual finding that in light of the conflicting testimony of the officer and the appellee, the Commonwealth failed to prove the gun was in plain view.

Our standard of review on appeal from a suppression ruling is limited to determining whether the factual findings are supported by the record and whether the legal conclusions drawn from those facts are in error. *Commonwealth v. Patterson*, 405 Pa.Super. 17, 591 A.2d 1075 (1991); *Commonwealth v. Morgan*, 517 Pa. 93, 534 A.2d 1054 (1987). We hold the trial court's legal conclusion the gun could not have been in plain view because of the use of a

flashlight was in error and accordingly reverse the suppression court's Order.[1]

Both the United States Constitution (fourth amendment) and Pennsylvania Constitution (Article I, § 8) prohibit unreasonable searches and seizures. Generally, a search is reasonable when it is conducted pursuant to a warrant supported by probable cause. *Commonwealth v. Ariondo*, 397 Pa.Super. 364, 580 A.2d 341 (1990), citing *Commonwealth v. Holzer*, 480 Pa. 93, 389 A.2d 101 (1978), and *Coolidge v. New Hampshire*, 403 U.S. 443, 91 S.Ct. 2022, 29 L.Ed.2d 564 (1971). One of the exceptions to the rule regarding warrantless searches arises where the contraband is in plain view. *Horton v. California*, 496 U.S. 128, 110 S.Ct. 2301, 110 L.Ed.2d 112 (1990); *Commonwealth v. Milyak*, 508 Pa. 2, 493 A.2d 1346 (1985). In *Commonwealth v. Davidson*, 389 Pa.Super. 166, 566 A.2d 897 (1989), the court set forth the applicable test:

> For the plain view doctrine to apply, three elements must be satisfied: 1) the initial intrusion must be lawful; 2) observation of the item must be inadvertent; and 3) there must be probable cause to link the observed property with criminal activity.

*Id.*, 389 Pa.Superior Ct. at 175, 566 A.2d at 901 (citations omitted). Clearly the officers' initial stopping of appellee for stealing gas and for violating the Motor Vehicle Code was lawful. There is also no doubt Officer Guthrie had probable cause to believe the gun under the driver's seat was evidence of a crime, since the gun appeared to be further incriminating evidence linking appellee to the gasoline theft which had been reported.

The contested issue is whether the officer's observation of the butt of the gun was inadvertent. During the suppression hearing the court implied that use of a flash-

---

**1.** The Commonwealth offers the following as alternative arguments: the gun was properly seized incident to appellee's lawful arrest; the search was justified as a protective sweep to ensure the safety of the officers; and the gun would have been inevitably discovered pursuant to a valid inventory search. In view of our finding regarding the plain view exception, these alternative arguments need not be addressed by this Court.

light to view inside the car meant the observance could not have been inadvertent. The court stated that had it been daylight, the officer would have had the right to seize the weapon under the plain view doctrine.[2] He concluded he did not think the officer had the right to use a flashlight to invade the privacy of a citizen without probable cause (S.T., 8/9/90, p. 55).

Relevant case law on this issue clearly shows the use of flashlights during the observation does not negate plain visibility. *Milyak, supra.* In *Milyak*, our Supreme Court held officers who observed stolen items through the windows of a van with the aid of a flashlight were justified in seizing the items. In *Commonwealth v. Bentley*, 276 Pa.Super. 41, 419 A.2d 85 (1980), when an officer arrived at the scene of an accident, the defendant quickly locked his car and fled with friends in another car. The officer subsequently looked in the window of the station wagon with the aid of a flashlight and observed the barrel of a gun on the floor in front of the driver's seat. The court held:

> The fact that [the officer] required illumination from a flashlight to see into the darkened interior of the vehicle did not prevent the gun from being in plain view or render the policeman's conduct unreasonable. The plain

2. The judge specifically asked both parties to find appropriate case law concerning a search were police officers used flashlights:

> See, we don't have a plain view search here at all. It can't be because he [Officer Guthrie] was aided, you know. You're in darkness. I'm very familiar with that section. I've gone by it hundreds of times in my lifetime.... There's not much light at the scene.... If they would have discovered the gun as a result of an inventory search of the car, which is an appropriate police procedure at the pound or wherever they're towing the car to. I think it's absolutely admissible and you would have whatever defenses you might have as to whether he knew or didn't know whether it was his gun or not his gun, whether it was his car or not his car. I think you [the Commonwealth] better find out whether the officer can use a flashlight under this factual situation, I'll be happy to get my law clerk on it right away and read what you want me to read. I think there's a whole line of cases about whether their factual situation would allow them that kind of intrusion and I think before we go forward I think we better find the answer to that.

(S.T., 8/9/90, pp. 43–44.) The parties, however, failed to produce any case law to aid the judge in his ruling.

view doctrine is premised, not, as appellant argues, upon the absence of an investigatory intent by the policeman, but upon the surrender of a reasonable expectation of privacy by the owner.

*Id.,* 276 Pa.Superior Ct. at 48, 419 A.2d at 88 (citations omitted).

Appellee asserts notwithstanding the fact the flashlight was used, the Commonwealth failed to prove by a preponderance of the evidence the item seized was in fact in plain view. Although the suppression court's holding was based on conflicting testimony that it was not clear whether the gun seized was in plain view, it inferred the reason for this conflict was the officer's use of the flashlight. After reviewing the record, we find the officer did observe the gun in plain view. The officer testified he saw the butt of a gun underneath the seat of the driver's side of the car when appellee exited the vehicle and he proceeded to reach in and remove the gun. Appellee testified the officer conducted the search as follows:

> Well, he shined the flashlight around on the seat and on the floors and that, and then he seemed to go right to where the gun was, under the driver's side of the seat, it was a bench seat and he pulled the gun right out like he knew it was there after he searched around.

(S.T., p. 36.) Appellee's statement that the officer pulled the gun out of the car "like he knew it was there" seems to corroborate the officer's testimony that he saw the butt of the gun from outside the car. Thus it does not appear the officer conducted a general search but instead he just seized the gun which he observed in plain view.

In light of the foregoing discussion, we reverse the trial court's suppression Order and remand the case for trial in accordance with this Opinion.

Jurisdiction relinquished.

BECK, J., concurs in the result.