J-S62015-14

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| COMMONWEALTH OF PENNSYLVANIA, | IN THE SUPERIOR COURT OF PENNSYLVANIA |
|---|---|
| Appellee | |
| v. | |
| RODRICK M. BRAYBOY, | |
| Appellant | No. 2322 EDA 2013 |

Appeal from the Judgment of Sentence entered March 23, 2011,
in the Court of Common Pleas of Delaware County,
Criminal Division, at No(s): CP-23-CR-0005604-2009

BEFORE:  ALLEN, OLSON, and OTT, JJ.

MEMORANDUM BY ALLEN, J.:          **FILED OCTOBER 08, 2014**

Rodrick M. Brayboy ("Appellant") appeals from the judgment of sentence imposed after a jury convicted him of persons not to possess a firearm, firearm carried without a license, two counts of aggravated assault, driving under the influence, two counts of terroristic threats, theft by receiving stolen property, and resisting arrest.[1]

The trial court detailed the pertinent facts and procedural history as follows:

> [O]n April 11, 2009, Appellant was arrested and charged with the [aforementioned crimes].  Appellant, through counsel, filed several pretrial omnibus motions, including a motion to

---

[1] 18 Pa.C.S.A. §§ 6105(a)(1), 6106(a)(1), 2702(a)(3), 3802(a)(1), 2706, 3925, and 5104.

suppress and a motion to dismiss based upon Pa.R.Crim.P. Rule 600, prior to the commencement of his jury trial on February 2, 2011. Appellant also filed numerous *pro se* omnibus pretrial motions while represented by counsel.

A suppression hearing began on January 28, 2010 and was continued and concluded on May 12, 2010. Following the hearing, [the trial] court denied Appellant's "Motion to Suppress Evidence" on June 14, 2010. ... . [The trial] court also denied Appellant's "Motion to Dismiss Pursuant to Pa.R.Crim.P. Rule 600" in open court following a hearing on August 10, 2010. Following the denial of Appellant's Rule 600 motion, the [trial] court issued findings of fact and conclusions of law on August 30, 2010. ...

Prior to trial Appellant also filed several interlocutory appeals with the Superior Court. On February 2, 2011, [the trial] court proceeded to trial based upon Pa.R.A.P. Rule 1701(b)(6). Following a two day trial, a jury found Appellant guilty of all charges except one count of aggravated assault. On March 23, 2011, [the trial] court sentenced Appellant to the following:

*Information A*.   Persons not to possess a firearm: 60 to 120 months of incarceration in state prison.

*Information B*.   Firearms not to be carried without a license: 42 months to 84 months of incarceration in state prison, concurrent to Information A.

*Information C*.   Aggravated assault: 27 months to 54 months of incarceration in state prison, concurrent to Information A & B.

*Information D*.   DUI, Tier 3, refusal: 72 hours to 6 months of incarceration in state prison, concurrent to Informations A, B, & C.

*Information E*.   Terroristic threats:

> *Count one*: 6 months to 12 months of incarceration in state prison, consecutive to Information A.
>
> *Count two*: 6 months to 12 months of incarceration in state prison, consecutive to Information A and E1.
>
> *Information F*: Receiving stolen property: 3 years of state probation, consecutive to Information A, B, C, D, E1 & E2.
>
> *Information I*: Resisting arrest: 2 years of state probation, consecutive to Informations A, B, C, D, E1, E2 & F.

Appellant was also ordered to complete a drug and alcohol evaluation, a Court Reporting Network [CRN] evaluation, submit to DNA testing, Safe Driving School, pay a fine of $1,000, and forfeit the firearm relating to the incident. Appellant was ordered to comply with the general rules and regulations governing probation and/or parole.

On April 21, 2011, Appellant filed a direct appeal. Thereafter, trial counsel petitioned for leave to withdraw and Steven O'Meara, Esquire, was appointed to represent Appellant on his appeal. Thereafter, on November 15, 2011, Appellant's appeal was dismissed for counsel's failure to file a brief. Thereafter, Appellant filed a "Motion for Post-Conviction Collateral Relief" seeking reinstatement of his appeal rights *nunc pro tunc*. Counsel was appointed, and following an amended petition, a response from the Commonwealth, and a hearing on this motion, [the trial] court granted this petition on July 10, 2013. Appellant filed the instant appeal on August 5, 2013. [Both Appellant and the trial court have complied with Pa.R.A.P. 1925.]

Trial Court Opinion, 3/5/14, at 1-3 (footnote omitted).

Appellant presents the following issues for our review:

I. Was the Trial Court in error for failing to find a violation of Pennsylvania Rule of Criminal Procedure 600 in that the Appellant was incarcerated without Trial beyond both the one

- 3 -

hundred eighty (180) day as well as the three hundred sixty five (365) day limit as provided in said Rule?

II. Was the Trial Court in error for failing to grant [Appellant's] Motion to Suppress Physical Evidence as a result of an illegal search and/or investigation by the police?

Appellant's Brief at 4.

Rule 600 was designed "to prevent unnecessary prosecutorial delay in bringing a defendant to trial." *Commonwealth v. Brock*, 61 A.3d 1015 1021 (Pa. 2013). "In evaluating Rule 600 issues, our standard of review of a trial court's decision is whether the trial court abused its discretion." *Commonwealth v. Hunt*, 858 A.2d 1234, 1238 (Pa. Super. 2004) (*en banc*), *appeal denied*, 875 A.2d 1073 (Pa. 2005) (citations and internal quotations omitted). "The proper scope of review … is limited to the evidence on the record of the Rule 600 evidentiary hearing, and the findings of the trial court. An appellate court must view the facts in the light most favorable to the prevailing party." *Id*. at 1238-39 (internal citations and quotation marks omitted). Importantly, a court will grant a motion to dismiss on Rule 600 grounds only if a defendant has a valid Rule 600 claim at the time the motion is filed. *Id*. at 1243.

Rule 600 provides, in pertinent part:

(A) …

    (2) Trial in a court case in which a written complaint is filed against the defendant, when the defendant is incarcerated on that case, shall commence no later

than ***180 days from the date on which the complaint is filed***.

    (3)    Trial in a court case in which a written complaint is filed against the defendant, when the defendant is at liberty on bail, shall commence ***no later than 365 days from the date on which the complaint is filed.***

\* \* \*

(C)    In determining the period for commencement of trial, there shall be excluded therefrom:

    (1)    the period of time between the filing of the written complaint and the defendant's arrest, provided that the defendant could not be apprehended because his or her whereabouts were unknown and could not be determined by due diligence;

\* \* \*

    (3)    such period of delay at any stage of the proceedings as results from:

        (a)    the unavailability of the defendant or the defendant's attorney;

        (b)    any continuance granted at the request of the defendant or the defendant's attorney.

(G)

\* \* \*

If the court, upon hearing, shall determine that the Commonwealth exercised due diligence and that the circumstances occasioning the postponement were beyond the control of the Commonwealth, the motion to dismiss shall be denied and the case shall be listed for trial on a date certain. ... If, at any time, it is determined that the Commonwealth did not exercise due diligence, the court shall dismiss the charges and discharge the defendant.

Pa.R.Crim.P. 600 (emphasis added).[2]

In the present case, Rule 600 required the Commonwealth to bring a defendant to trial within 180 days of the filing of the criminal complaint. *See* Pa.R.Crim.P., Rule 600(A)(2). Rule 600, however, specifically contemplates that certain periods of time shall be excluded in calculating compliance. In the context of Rule 600, "excludable time" is differentiated from "excusable delay" as follows:

> 'Excludable time' is defined in Rule 600(C) as the period of time between the filing of the written complaint and the defendant's arrest, … any period of time for which the defendant expressly waives Rule 600; and/or such period of delay at any stage of the proceedings as results from: (a) the unavailability of the defendant or the defendant's attorney; (b) any continuance granted at the request of the defendant or the defendant's attorney. 'Excusable delay' is not expressly defined in Rule 600, but the legal construct takes into account delays which occur as a result of circumstances beyond the Commonwealth's control and despite its due diligence.

*Commonwealth v. Brown, M.*, 875 A.2d 1128, 1135 (Pa. Super. 2005), *appeal denied*, 891 A.2d 729 (Pa. 2005) (*quoting Commonwealth v. Hunt*, 858 A.2d 1234, 1241 (Pa. Super. 2004) (*en banc*), *appeal denied*, 875 A.2d 1073 (Pa. 2005).

---

[2] Prior Rule 600 was rescinded on October 1, 2012, and a revised Rule 600 was made effective on July 1, 2013. *See* 42 Pa.B. 6622. Since "Prior Rule 600" was in effect at the time of the trial court's decision on Appellant's Rule 600 motion, our analysis will focus on that version of the Rule.

To summarize, the courts of this Commonwealth employ three steps ... in determining whether Rule 600 requires dismissal of charges against a defendant. First, Rule 600(A) provides the mechanical run date. Second, we determine whether any excludable time exists pursuant to Rule 600(C). We add the amount of excludable time, if any, to the mechanical run date to arrive at an adjusted run date.

If the trial takes place after the adjusted run date, we apply the due diligence analysis set forth in Rule 600( [D] ). As we have explained, Rule 600[ ] encompasses a wide variety of circumstances under which a period of delay was outside the control of the Commonwealth and not the result of the Commonwealth's lack of diligence. Any such period of delay results in an extension of the run date. Addition of any Rule 600[ ] extensions to the adjusted run date produces the final Rule 600 run date. If the Commonwealth does not bring the defendant to trial on or before the final run date, the trial court must dismiss the charges.

*Commonwealth v. Armstrong*, 74 A.3d 228, 236 (Pa. Super. 2013) (citations omitted). "Due diligence is a fact-specific concept that must be determined on a case-by-case basis. Due diligence does not require perfect vigilance and punctilious care, but rather a showing by the Commonwealth that a reasonable effort has been put forth." *Commonwealth v. Brown*, 875 A.2d 1128, 1138 (Pa. Super. 2005) (citations and internal quotations omitted). "Reasonable effort includes such actions as the Commonwealth listing the case for trial prior to the run date to ensure that [defendant] was brought to trial within the time prescribed by Rule [600]. This Court has further held the Commonwealth exercised reasonable effort when within the run date the Commonwealth was ready to commence trial and was

prevented from doing so by an administrative error which resulted in a trial date three days beyond the run date." ***Id***.

Here, the mechanical run date was Monday, October 8, 2009, 180 days after the complaint against Appellant was filed. *See* Pa.R.Crim.P. 600(A)(2). Both Appellant and the Commonwealth agree that Appellant's trial did not commence until February 1, 2011, 481 days after expiration of the mechanical run date. The trial court concluded, however, that because trial commenced prior to the adjusted run date of February 25, 2011 (after accounting for all excusable and excludable delay), Appellant was not entitled to Rule 600 relief. We agree with the trial court.

In the portion of his brief pertaining to his Rule 600 claim, Appellant does not set forth any arguments challenging the delay that occurred prior to August 31, 2010. Appellant's Brief at 12-13. Moreover, Appellant acknowledges that the delay that occurred between August 31, 2010 and December 5, 2010 was excludable due to Appellant's requests for continuances. *Id*. Appellant argues, however, that he is entitled to Rule 600 relief for the delay that occurred after December 6, 2010, because he was prepared to proceed to trial on December 6, 2010, and the trial court's decision to continue the trial until February 2, 2011 was not excusable. *Id*.

The trial court refuted Appellant's Rule 600 claim as follows:

On December 6, 2010, [the trial court] presided over the [unrelated] jury trial of Commonwealth v. Wariso Jumbo, No. 3268-10, and was not available to preside over Appellant's trial. Appellant was given a new trial date of January 10, 2011, which

was the earliest consistent with [the trial] court's calendar. [The trial] court finds that the 35 DAYS between these dates, which occurred through no lack of due diligence by the Commonwealth, are EXCUSABLE.

...

On January 10, 2011, [the trial] court was not available to sit for Appellant's trial because it was presiding over other cases on its list that week and provided a new trial date of January 24, 2011, which was the earliest date consistent with [the trial] court's calendar. [The trial] court finds that the 14 DAYS between these dates, which occurred through no lack of due diligence by the Commonwealth, are EXCUSABLE.

Trial Court Opinion, 3/5/14, at 10 (capitalization in original).

Given that the trial court was presiding over another matter on December 6, 2010, and our review of the record confirms that on January 10, 2011, the trial court entered an order continuing Appellant's trial to January 31, 2011 because the trial court was "unavailable the week of 1/10/11," we find no abuse of discretion in the trial court's determination that the period after December 6, 2011 was excusable. *See* Trial Court Order, 1/10/11. We have explained:

Judicial delay may justify postponing trial beyond the adjusted run date if the Commonwealth was prepared to commence trial prior to the expiration of the mandatory period but the court was unavailable because of 'scheduling difficulties and the like.' It would be ill-advised to require courts to continually arrange and rearrange their schedules to achieve a rigid accommodation of the deadlines imposed by Pennsylvania's speedy trial procedural rules. Any such interpretation of Rules 600 or 1013 would require judges, prosecutors, and defense attorneys to be available at all times to try defendants whose adjusted run date is about to expire. The procedural rules were designed to promote the administration of criminal justice within the context

of the entire judicial system, not to render that system hostage
to its own closed logic.

***Commonwealth v. Preston***, 904 A.2d 1, 14 (Pa. Super. 2006) (citations
and internal quotations omitted). For the foregoing reasons, we find no
abuse of discretion in the trial court's denial of Appellant's Rule 600 motion.

Appellant next argues that the trial court erred in failing to grant his
motion to suppress the evidence recovered after his vehicle was stopped by
police. The trial court recounted the circumstances surrounding the stop of
Appellant's vehicle as follows:

> On April 11, 2009, just before 2:00 A.M., Officer William
> Carey of the Chester City Police Department was on patrol in full
> uniform and in a marked vehicle. Officer Carey was traveling
> east on Ninth Street when he stopped at a red light at the
> intersection of Ninth Street and Central Avenue, on the west side
> of the city. There were about four or five cars in front of Officer
> Carey, including a blue four-door Oldsmobile which was later
> determined to be operated by Appellant, which was third in line.
> Once the light turned green, the Appellant drove out of his lane,
> passed the two vehicles in front of him on the right at a high
> rate of speed, and then got back in the original lane. Officer
> Carey testified that once the vehicle passed other vehicles, it
> "kind of jerked its way back into the traffic lane, swerving back
> and forth, and gained control." As a result of this action, Officer
> Carey activated his emergency lights and siren and pursued the
> vehicle. Officer Carey testified that he accelerated in excess of
> 60 miles per hour to start gaining on the vehicle. Officer Carey
> was able to catch up to the vehicle when it pulled over on Lloyd
> Street. Once the vehicle pulled over, the Appellant shut off the
> vehicle's lights; however, the vehicle was still running. Officer
> Carey had several lights on the Appellant's vehicle, including a
> spotlight and overhead takedown lights and was able to observe
> Appellant "lean down in the seat and forward." Officer Carey
> testified that through his training and experience, in which he
> has made nearly 60 firearm arrests, that Appellant's movement
> was a "red flag." There was also one passenger in the vehicle,
> later identified as Eric McClary. Officer Carey radioed and waited

- 10 -

for backup to arrive prior to approaching Appellant's vehicle. Soon thereafter, Officers Joseph Dougherty, Danny Bornaman, and later, Robert McCreight arrived on scene.

Officer Carey approached the driver's side door while Officer Dougherty approached the passenger's side door. Upon command, Appellant placed the car in park and shut the vehicle off. Appellant provided his name and date of birth, but was unable to provide his license, registration, and insurance information. While talking to the Appellant, Officer Carey "detected a strong odor of alcoholic beverage coming from the vehicle and from his breath." Officer Carey also observed that Appellant's eyes were bloodshot and his speech was somewhat slurred. The Appellant also had an aggressive tone with Officer Carey and stated that Officer Carey had no right to stop him.

Based upon these observations, Officer Carey asked Appellant to step out of the vehicle in order to pat him down and to check the wingspan of the vehicle for safety purposes. When asked if he had any weapons on his person, the Appellant responded in the negative. Officer Carey testified at trial that nothing was recovered from the pat down of Appellant. The Appellant was then moved to the back of the vehicle where he was supervised by Officer Bornaman. Thereafter, Officer Carey directed his attention to the passenger of the vehicle.

Meanwhile, Officer Dougherty was standing by the passenger side doorway with his flashlight, looking through the vehicle. Without touching anything inside the vehicle, Officer Dougherty observed the rear of a pistol grip of a firearm protruding from underneath the driver's seat. The firearm was within arm's reach of the driver and the passenger. Officer Dougherty immediately alerted the other officers to handcuff the Appellant and the passenger. As soon as Officer Bornaman placed Appellant in handcuffs, an altercation ensued. Appellant kicked Officer Bornaman and attempted to wrestle his way free, but the two fell to the street and the struggle continued. Thereafter, Appellant failed to comply with the officers' requests to stop resisting, and proceeded to continue to kick both Officers Bornaman and Dougherty. Appellant became violent, loud, and screamed at the officers. Eventually, Officer Dougherty deployed his taser in order to subdue Appellant. Officer Carey testified that this struggle took about a minute and he emphasized that "a minute is a long time."

Once in handcuffs and under control, both Appellant and the passenger were placed in the back of Officer Carey's police vehicle and placed under arrest

Trial Court Opinion, 3/5/14 at 4-6 (citations to notes of testimony and footnotes omitted).

Appellant argues that Officer Carey's actions in ordering Appellant to exit his vehicle were unsupported by reasonable suspicion and further, that the officer's warrantless seizure of the gun was not justified under the limited automobile exception to the warrant requirement, and therefore unconstitutional. Appellant's Brief at 16. Our scope and standard of review is well-settled:

An appellate court's standard of review in addressing a challenge to a trial court's denial of a suppression motion is limited to determining whether the factual findings are supported by the record and whether the legal conclusions drawn from those facts are correct. [Because] the prosecution prevailed in the suppression court, we may consider only the evidence of the prosecution and so much of the evidence for the defense as remains uncontradicted when read in the context of the record as a whole. Where the record supports the factual findings of the trial court, we are bound by those facts and may reverse only if the legal conclusions drawn therefrom are in error.

*Commonwealth v. Reese*, 31 A.3d 708, 721 (Pa. Super. 2011) (citations omitted).

"In order to justify a pat-down search, or *Terry* stop, the officer must have reasonable suspicion, under the totality of the circumstances, that criminal activity is afoot and that 'the individual whose suspicious behavior he is investigating at close range is armed and presently dangerous to the

officer or to others. The purpose of this limited search is not to discover evidence of crime, but to allow the officer to pursue his investigation without fear of violence.'" ***Commonwealth v. Guess***, 53 A.3d 895, 901 (Pa. Super. 2012) (citations omitted).

In denying Appellant's suppression motion, the trial court determined:

> … Once [Appellant] pulled over, Officer Carey [based on his observation of Appellant passing a vehicle on the right, swerving into oncoming traffic, and speeding], asked for [Appellant's] license, registration, and insurance information, which is standard procedure during any vehicle stop. ***Commonwealth v. Sands***, 887 A.2d 261 (Pa. Super. 2005).
>
> While asking for these documents, which [Appellant] *did not provide*, Officer Carey detected a strong smell of alcohol coming from [Appellant's] breath; [Appellant] also slurred his words.
>
> Once Officer Carey obtained sufficient information from [Appellant] to check on his operator status, he discovered that [Appellant] had a suspended license. Officer Carey was well within his rights to have [Appellant] and the passenger step out of the vehicle. Police officers may request this during a traffic stop "as a matter of course"; not even reasonable suspicion is needed. ***Commonwealth v. Clinton***, 905 A.2d 1026 (Pa. Super. 2006) (internal citations omitted).
>
> Once Officer Carey had [Appellant] exit the vehicle, he needed a reasonable belief that [Appellant] was armed to justify his frisk of [Appellant] and the passenger. ***Commonwealth v. Gray***, 896 A.2d 601, 606 (Pa. Super. 2006) [Appellant's suspended license, failure to produce *any* documentation, combined with Officer Carey's observation of [Appellant] "slump[ing] down and lean[ing] forward," were sufficient for Officer Carey to have a reasonable suspicion that [Appellant] might be armed and dangerous, justifying the pat-down. ***See Commonwealth v. Mack***, 953 A.2d 587 (Pa. Super. 2008) (Appellant was engaged in suspicious movement after being

- 13 -

pulled over, and could not provide a driver's license registration, or insurance paperwork).

> Officer Carey testified that one reason he frisked [Appellant] was a concern for "officer safety." The fact that there were multiple officers on the scene does not mean that Officer Carey's concern for officer safety was unreasonable. As the court noted in **Mack**, "the fact that an officer may be outnumbered is certainly a factor to be considered when determining whether an officer's safety is at risk, but the reverse scenario does not amount to a lesser chance that the suspect is not armed." **Mack**, 653 A.2d 587, 591.

Trial Court Findings of Fact and Conclusions of Law, 6/14/10, at 4-5 (emphasis in original, citations to notes of testimony omitted).

Our review of the record supports the trial court's determination that Officer Carey's pat down of Appellant was supported by reasonable suspicion. At the suppression hearing, Officer Carey testified that when he conducted the stop of Appellant's vehicle, he observed both occupants of the vehicle "moving around", and in particular observed Appellant in the driver's seat making suspicious movements, slumping down and leaning forward in his seat in a manner that caused Officer Carey to fear for his safety, giving the officer an "eerie feeling", such that he sought cover by moving "around to the rear of [his] patrol vehicle and waited for backup" before approaching Appellant's vehicle. N.T., 1/28/10, at 65-66. When Officer Carey subsequently approached the driver's side door of Appellant's vehicle to speak with Appellant, Officer Carey had to instruct Appellant multiple times to turn the vehicle off, and Appellant did not immediately comply. *Id*. at 68

Officer Carey then requested that Appellant keep his hands on the steering wheel, and due to Appellant's lack of compliance, Officer Carey had to repeat the instruction multiple times. *Id*. Given the foregoing, we find no error in the trial court's determination that under the totality of the circumstances, Officer Carey articulated sufficient facts to support a belief that Appellant might be armed and dangerous. **See Commonwealth v. Mack**, 953 A.2d at 591 ("An overt threat by the suspect or clear showing of a weapon is not required for a frisk. It is well-established that '[t]he officer need not be absolutely certain that the individual is armed; the issue is whether a reasonably prudent man in the circumstances would be warranted in the belief that his safety or that of others was in danger.'").

Appellant next argues that the police seizure of the gun from underneath the driver's seat of Appellant's vehicle constituted an unconstitutional warrantless seizure. Appellant's Brief at 15. We disagree. As the trial court explained:

> It was while Officer Carey was patting down [Appellant] and the passenger for weapons that Officer Dougherty saw a gun handle sticking out from under the seat, which he was able to see from outside the car while using his flashlight.

> ***

> [The plain view exception to the warrant requirement] permits a valid warrantless seizure of an item where: (1) the police are at a lawful vantage point (where the police have not violated the Fourth Amendment in arriving at the location from which the item could be viewed); (2) the incriminating character of the item is immediately apparent; and (3) the police have a

- 15 -

lawful right of access to the item itself.  ***Commonwealth v. MCCree***, 924 A.2d 621, 625 (2007); ***Commonwealth v. Jones***, 988 A.2d 649 (2010).

[T]he police lawfully seized the gun under the plain view exception.  As set forth above, Officers Carey and Dougherty lawfully approached the vehicle in which the gun was observed.

The incriminating nature of the gun handle in the vehicle was also immediately apparent to Officer Dougherty.  Using a flashlight to look inside a car does not violate plain view, so Officer Dougherty did not violate [Appellant's] constitutional protections when he used the flashlight to illuminate the inside of the car.  ***Commonwealth v. Merkt***, 600 A.2d 1297, 1299 (Pa. Super. 1992).

[T]he police had [a] lawful right to access the item.  After [Appellant] and the passenger were detained, [Appellant] assaulted Officer Bornaman.  It was after this occurred that the gun was seized from the vehicle.  [The trial court found] that the seizure of the gun was justified under the limited automobile exception to the warrant requirement.

Trial Court Findings of Fact and Conclusions of Law, 6/14/10, at 5-6 (citations to notes of testimony omitted and footnote omitted).[3]  Our review of the record supports the trial court's findings, and we find no error in the trial court's determination that seizure of the gun was permissible under the plain view exception.  *See, e.g.*, N.T., 1/28/10, at 85-88.

---

[3] In ***Commonwealth v. Gary***, 91 A.3d 102, 104 (2014) (opinion announcing the judgment of the court), our Supreme Court adopted the federal automobile exception to the warrant requirement, "which allows police officers to search a motor vehicle when there is probable cause to do so and does not require any exigency beyond the inherent mobility of a motor vehicle." The search in Appellant's case, however, occurred before ***Gary*** was decided.

For the foregoing reasons, we affirm the judgment of sentence.

Judgment of sentence affirmed.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary


Date: 10/8/2014