566 A.2d 897

**COMMONWEALTH of Pennsylvania, Appellant,**

v.

**Lavonia DAVIDSON.**

Superior Court of Pennsylvania.

Argued Aug. 24, 1989.

Filed Nov. 30, 1989.

Karen L. Grigsby, Asst. Dist. Atty., Philadelphia, for Com., appellant.

Owen Larrabee, Philadelphia, for appellee.

Before CIRILLO, President Judge, and KELLY and CERCONE, JJ.

CIRILLO, President Judge:

This is an appeal from an order entered by the Court of Common Pleas of Philadelphia County suppressing evidence taken from the purse of the appellee, Lavonia Davidson. For the following reasons, we reverse that order.

Police Officer Alvin Ventour stopped Davidson, her boy-friend Herbert Reid, and her young son for a traffic violation at 52nd and Arch Streets in Philadelphia. During the stop, Officer Ventour noticed that the pockets of the driver, Reid, were bulging, and that a plastic bag partially protruded from one. Since he was alone when he made the traffic stop, Officer Ventour radioed for backup. He then asked Reid to exit the car, performed a frisk, and determined that the plastic bag he had initially seen contained what he believed to be cocaine. With the assistance of back up units that had responded to his radio call, Officer Ventour arrested Reid. The search incident to that arrest revealed over $3000.00 in cash and numerous plastic bags of white powder on his person.

Pursuant to Officer Ventour's orders, Davidson had remained in the passenger's seat of the car during this time. After Reid's arrest, Officer Joseph Cornell was told to take the car to the police station; Davidson and her son were still in the car.[1] Officer Cornell testified that during the drive to the police station, Davidson asked him whether Reid was being arrested, how long he would be detained, and if she could have the car when they reached the district. After Officer Cornell replied that he did not know, Davidson reached for her handbag. Officer Cornell asked her not to touch the bag, testifying that he felt unsafe having her do so while he drove. She ignored him and reached for her purse again; he then took the purse and placed it between his legs. He testified that it felt "very heavy."

When Officer Cornell and Davidson reached the police station, Davidson asked if she could leave. Officer Cornell replied that she would have to wait until his supervisor as

---

1. The testimony at the suppression hearing does not indicate whether Davidson thought she was required to go along.

well as Reid and the other officers involved in the arrest arrived. She then asked to use the bathroom, and requested the return of her handbag. Before returning the handbag to Davidson, Officer Cornell opened the bag to search it. He found a .25 caliber automatic pistol, 113 vials of "crack" cocaine, some cocaine in powder form, and several packages of marijuana. Davidson was then arrested, and charged with possession of a controlled substance, possession of a controlled substance with intent to deliver, and violations of the Uniform Firearms Act.

In an omnibus pretrial motion, Davidson moved for suppression of the evidence seized from her bag. The suppression court granted the motion, finding that Officer Cornell had neither probable cause nor a reasonable basis for the search. The Commonwealth filed this appeal, certifying that suppression of the evidence in question will substantially impair its prosecution of the charges against Davidson. *See Commonwealth v. Dugger*, 506 Pa. 537, 486 A.2d 382 (1985).

In reviewing a suppression order we are bound by the hearing court's findings of fact, unless we determine that those findings are not supported by the record. *Commonwealth v. White*, 358 Pa.Super. 120, 123, 516 A.2d 1211, 1212 (1986). When the evidence supports the factual findings of the suppression court, we may reverse only if there is an error of law. *Commonwealth v. Reddix*, 355 Pa.Super. 514, 518, 513 A.2d 1041, 1042 (1986). We may, however, review the legitimacy of the inferences and legal conclusions drawn from those findings of fact. *Id.* Here, there is no dispute as to facts and thus, we will address only the validity of the inferences and legal conclusions drawn by the suppression court.

The Commonwealth argues that the circumstances of this case gave Officer Cornell reasonable concern for his safety which justified the search of the purse under the principles enunciated by the United States Supreme Court in *Terry v. Ohio*, 392 U.S. 1, 88 S.Ct. 1868, 20 L.Ed.2d 889

(1968). In *Terry,* the Court set forth the parameters for a warrantless search during an investigative stop:

[T]here must be a narrowly drawn authority to permit a reasonable search for weapons for the protection of the police officer, where he has reason to believe that he is dealing with an armed and dangerous individual, regardless of whether he has probable cause to arrest the individual for a crime. The officer need not be absolutely certain that the individual is armed; the issue is whether a reasonably prudent man in the circumstances would be warranted in the belief that his safety or that of others was in danger.... And in determining whether the officer acted reasonably in such circumstances, due weight must be given, not to his inchoate and unparticularized suspicion or .''hunch,'' but to the specific reasonable inferences which he is entitled to draw from the facts in light of his experiences.

*Id.* at 27, 88 S.Ct. at 1883.

The Pennsylvania Supreme Court has also allowed for investigatory stops and frisks in this Commonwealth. In *Commonwealth v. Hicks,* 434 Pa. 153, 253 A.2d 276 (1969), based substantially on *Terry v. Ohio, supra,* the court set the standard for *Terry* stops and frisks in Pennsylvania:

even if probable cause to arrest is absent, the police officer may still legitimately seize a person ..., and conduct a limited search of the individual's outer clothing in an attempt to discover the presence of weapons which might be used to endanger the safety of the police officer and others, *if* the police officer observes unusual and suspicious conduct on the part of the individual seized which leads him reasonably to conclude that criminal activity may be afoot and that the person with whom he is dealing may be armed and dangerous. (Footnote omitted).

*Hicks,* 434 Pa. at 158, 253 A.2d at 279 (emphasis original).

To determine whether a search or seizure is reasonable, we must balance the societal interest in law enforcement and in protecting law enforcement officials against the

individual's right to personal security free from arbitrary governmental interference. *United States v. Brignoni-Ponce*, 422 U.S. 873, 878, 95 S.Ct. 2574, 2578, 45 L.Ed.2d 607 (1975). *See also Commonwealth v. Rehmeyer*, 349 Pa.Super. 176, 182, 502 A.2d 1332, 1335 (1987). *Terry* achieved this balance by permitting a limited pat down search of an individual's outer clothing for something that felt like a weapon. *Terry*, 392 U.S. at 30–31, 88 S.Ct. at 1884–1885; *Rehmeyer*, 349 Pa.Super. at 187, 502 A.2d at 1336. Specifically, such a search "must be limited to that which is necessary for the discovery of weapons which might be used to harm the officer or others nearby, and may be characterized as something less than a 'full' search, even though it remains a serious intrusion." *Terry*, 392 U.S. at 26, 88 S.Ct. at 1882. Moreover, "because the sole justification of the search in the present situation is the *protection of the police officer and others nearby*, ... it must therefore be confined in scope to an intrusion reasonably designed to discover guns, knives, clubs, or other instruments for the assault of the police officer." *Id.* at 29, 88 S.Ct. at 1884 (emphasis added).

In the appropriate situations, the scope of *Terry* stops and frisks has been extended, both in this Commonwealth and in other jurisdictions, to apply to searches of pocketbooks and other bags. In *United States v. Barlin*, 686 F.2d 81 (2d Cir.1982), the Second Circuit Court of Appeals upheld the validity of a protective search of a pocketbook. There, federal agents searched an apartment pursuant to a valid search warrant. The agents had already found a shotgun, "modest amounts of ... pure heroin, two packages of cocaine, a triple beam balance, packaging material, shotgun shells and handgun ammunition" when three defendants entered. *Id.* at 86. The agents immediately arrested and frisked one defendant pursuant to an arrest warrant; the frisk yielded $56,600 in cash. The other two defendants were told to stand against the wall and the agents proceeded to pat them down. Sometime later the agents noticed one defendant's pocketbook laying five to

twenty feet from her. *Id.* They searched it and found money and drugs.

The Second Circuit held the search of the purse was justified as a valid investigatory measure under *Terry v. Ohio, supra.* The court noted that the three defendants "arrived ... against a background that comported with 'the violent nature of narcotics crime.'" *Barlin,* 686 F.2d at 87 (quoting *United States v. Vasquez,* 634 F.2d 41, 43 (2d Cir.1980)), and that the owner of the purse entered with two people whose involvement in narcotics transactions seemed apparent. *Barlin,* 686 F.2d at 87. Consequently, the court determined that it would have been unwise for the agents to have given the purse back and released its owner or to have left the purse unsearched, in light of its conclusion that a pocketbook "is the most likely place for a woman to conceal a weapon." *Id.* Moreover, "the mere passage of time [between the defendant's entrance and the discovery of the purse] did not immunize the pocketbook from search." *Id.* See also *United States v. Morales,* 549 F.Supp. 217 (S.D.N.Y.1982) (police may form a reasonable suspicion that a person is armed and dangerous based on suspected drug activity thereby justifying a search of the duffel bag because simply removing it from suspect's possession reduces the danger but does not eliminate it).

This court allowed the limited search of a bag to discover weapons in *Commonwealth v. Capers,* 340 Pa.Super. 136, 489 A.2d 879 (1985). There, the police stopped the defendant because he matched the description of an armed assailant broadcast over the police radio. During the investigatory stop of the defendant, the police searched both the defendant's person and the plastic bag he carried. This court held that both searches were justified under *Terry, supra.* The police knew the perpetrator of the crimes had used a knife, thereby justifying the weapons search of his person. Further, "[b]ecause the plastic bag was easily within Capers['] reach, it was also proper to examine it for a weapon." *Capers,* 340 Pa.Super. at 141, 489 A.2d at 881.

Under the standards of *Terry*, as explained and applied in *Barlin* and *Capers*, we have no difficulty in concluding that the circumstances of this case gave Officer Cornell a reasonable suspicion that Davidson was armed and dangerous, a suspicion which justified both his appropriation of the purse during the drive to the police station and the subsequent search of it.

The significant amount of money and white powder found on Reid would lead a reasonable policeman with eleven years experience to believe that Reid was involved in drug trafficking and to suspect that Davidson, his companion, could also be involved. Thus, the officer's subsequent actions should "be measured against a background that includes 'the violent nature of narcotics crime.'" *Morales*, 549 F.Supp. at 223 (quoting *Barlin*, 686 F.2d at 86.) "[T]o 'substantial dealers in narcotics,' firearms are as much 'tools of the trade' as are most commonly recognized articles of narcotics paraphernalia." *Morales*, 549 F.Supp. at 221 (quoting *United States v. Wiener*, 534 F.2d 15, 18 (2d Cir.1976)). Moreover, it is well known that the distribution of narcotics is often punctuated by acts of violence involving various lethal weapons.[2] When the search of Reid

**2.** Of the 402 homicides in Philadelphia in 1988, nearly 100 were known to be drug related; of the 335 homicides in 1987, at least 77 were drug related. *See* Boubion "City's Murder Rate on Record Race," *Philadelphia Daily News*, at 11 (March 20, 1989); Samuel, "Three Weekend Homicides Bring Philadelphia Total to 108," *Philadelphia Inquirer*, at 7B (March 20, 1989). The Third Circuit Court of Appeals, along with many other federal courts, have even taken judicial notice that "drug dealers are likely to be armed and dangerous." *See, e.g., United States v. Adams*, 759 F.2d 1099, 1109 (3rd Cir.1985).

Moreover, a recent panel of this court acknowledged the danger and possibility of violence inherent in possession and distribution of narcotics.

Although the suspicion of narcotics possession and distribution is not universally recognized as a circumstance which, standing alone, gives rise to an inference of dangerousness, we believe that the better view is that it does....

We hold, therefore, even though the officers who detained [the defendant] had no information that he was armed or that he had a past history of violence, they acted reasonably when conducting a protective pat-down search for weapons in light of the fact that they had a reasonable suspicion that Williams was presently engaged in

produced no weapons, other than a pocket knife, it would be reasonable for the police to believe that some sort of weapon was nearby.

Upon their arrival at the police station, Officer Cornell and Davidson exited the car, and Davidson requested the return of her pocketbook. Once Davidson made this request, Officer Cornell had to confirm or negate his reasonable suspicion that the pocketbook contained a weapon; if he allowed Davidson access to it, he would no longer be assured of his safety. Since Officer Cornell had already held the pocketbook in his hands and acquired all the information he would discover in a pat down of it, a pat down of the pocketbook at this point would have been useless. *See Bonds v. Georgia,* 188 Ga.App. 135, 137, 372 S.E.2d 448, 451 (1988) ("Merely patting down a purse, even if it was pliable, would not [reveal a weapon to the touch] as the nature of the objects felt would not necessarily identify them as non-weapons"). At that moment, based on all the information available to him, the circumstances of Reid's arrest, Davidson's constant attempts to get to the pocketbook, its unusual weight, and the uselessness of a pat down, only a search of the purse could guarantee the officer's safety.

The search conducted by Officer Cornell did not take the form of a "general exploratory search for whatever evidence of criminal activity" might be found; Officer Cornell did not go on a fishing expedition. *Morales,* 549 F.Supp. at 224. He opened the bag for one purpose: to determine whether it contained a weapon that would place both his own safety and that of others in jeopardy. This search was the logical extension of the *Terry* stop pat down. Officer Cornell formed a reasonable suspicion that Davidson was

narcotics distribution. To hold otherwise would be an invitation to violence in what is always a potentially explosive situation. *Williams v. Commonwealth,* 4 Va.App. 53, [67], 354 S.E.2d 79, 87 (1987).

*Commonwealth v. Rodriquez,* 387 Pa.Super. 271, 280–281, 564 A.2d 174, 179 (1989).

armed and dangerous *plus* he had been asked to return the pocketbook which would make her dangerous. Then and only then did he conduct a limited search of the pocketbook.

We conclude that under these circumstances, Officer Cornell's actions were proper and therefore the gun is admissible as the product of a valid protective search under *Terry*.

We now turn to the admissibility of the drugs found in Davidson's pocketbook. We hold that the drugs found in the pocketbook were in the plain view of Officer Cornell and consequently are also admissible.

"For the plain view doctrine to apply, three elements must be satisfied: 1) the initial intrusion must be lawful; 2) observation of the item must be inadvertent; and 3) there must be probable cause to link the observed property with criminal activity." *Commonwealth v. Pine*, 370 Pa.Super. 410, 419, 536 A.2d 811, 816 (1988). *See also Commonwealth v. Harris*, 479 Pa. 131, 387 A.2d 869 (1978).

The initial intrusion into the pocketbook constituted a valid protective search under *Terry v. Ohio, supra*, and thus was lawful. *Pine*, 370 Pa.Super. at 419, 536 A.2d at 816; *Commonwealth v. Kendrick*, 340 Pa.Super. 563, 570, 490 A.2d 923, 926 (1985). Officer Cornell observed the drugs inadvertently while he searched the pocketbook to ascertain whether it contained any weapons, not to discover drugs. Finally, probable cause existed to link the drugs to criminal activity because by definition, the mere possession of drugs is a criminal activity. Since all of the factors are present, the drugs found in plain view are admissible evidence at trial.

The suppression order is hereby reversed, and the case remanded for trial.