J-S72041-18

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| | | |
|---|---|---|
| COMMONWEALTH OF PENNSYLVANIA | : | IN THE SUPERIOR COURT OF |
| | : | PENNSYLVANIA |
| | : | |
| v. | : | |
| | : | |
| | : | |
| RICARDO VARGAS, JR., | : | |
| | : | |
| Appellant. | : | No. 740 MDA 2018 |

Appeal from the PCRA Order, April 19, 2018,
in the Court of Common Pleas of Lancaster County,
Criminal Division at No(s): CP-36-CR-0001281-2016.

BEFORE: BOWES, J., SHOGAN, J., and KUNSELMAN, J.

MEMORANDUM BY KUNSELMAN, J.: **FILED JUNE 04, 2019**

Ricardo Vargas Jr., appeals from the order denying his petition for relief pursuant to the Post Conviction Relief Act ("PCRA"), 42 Pa.C.S.A. §§ 9541-9546. For the reasons that follow, we affirm.

The PCRA court summarized the pertinent facts involving the investigation of Vargas as follows:

> The investigation in this matter began in February 2016 based on information from a confidential informant identified as CI #1 ("CI #1)." CI #1 informed Detective Jesse Zimmerman that a man named "Rick" was in the business of selling heroin from his residence at 45 S. Marshall Street in Lancaster City and that he/she had personally purchased heroin directly from "Rick" at his residence as recently as February 2016. CI #1 provided a physical description of "Rick" and pointed out "Rick's" residence and a burgundy Ford Explorer bearing Pennsylvania registration JZS-7097 that he [sic] knew "Rick" to drive. Detective Zimmerman completed a PennDot registration check of JZS-7097 and discovered that the

burgundy Ford Explorer was owned by [Vargas]. Detective Zimmerman also obtained a photograph of [Vargas] from PennDot and CI #1 positively identified the photograph of [Vargas] as the person he/she knows as "Rick."

CI #1 had previously provided reliable information to police that led to at least one arrest and [drug] conviction[.] CI #1 also expressed knowledge of controlled substances, including the pricing, packaging and terminology associated with the sale of heroin. Using CI #1, the Lancaster County Drug Task Force conducted two (2) separate controlled purchases of cocaine from [Vargas] at his residence. During both of the controlled purchases, CI #1 was provided with Drug Task Force/DA funds, was searched for contraband prior to the purchase with negative results, was observed walking to and from [Vargas'] residence, upon return, turned over a quantity of heroin reportedly purchased from [Vargas] and reported observing additional quantities of heroin within the residence for the purpose of future sales.

During the month of March 2016, Detective Zimmerman conducted surveillance at 45 S. Marshall Street and observed [Vargas] exit and enter the residence on several occasions and also observed various individuals enter and exit the residence for short periods of time. Detective Zimmerman states that his training and experience demonstrate that such activity is indicative of drug dealing. Detective Zimmerman states that his training and experience demonstrate that possessors and sellers of illegal drugs are known to maintain certain items related to their criminal activity within their residence, including: firearms or other weapons for securing drugs and proceeds; books, records, receipts, notes and ledgers for accounting; and paraphernalia for cutting, packaging, weighing and distributing the illegal drugs. Detective Zimmerman obtained a criminal history for [Vargas], which revealed that on January 13, 2011, [Vargas] pled guilty to a felony [drug charge] and was sentenced to two (2) to four (4) years of incarceration and two (2) years of probation.

PCRA Court Opinion, 4/19/18, at 1-3 (footnotes omitted).

Following his investigation, Detective Zimmerman applied for and obtained, on March 4, 2016, a search warrant for Vargas' residence. Members of the Lancaster County Drug Task Force executed the warrant that same day. As the PCRA court further explained:

> Prior to executing the search warrant, detectives conducted surveillance and waited until [Vargas] was present at the residence to execute the search warrant. Detective Zimmerman testified that the purpose of waiting for [Vargas] to be present was to make sure [Vargas] did not arrive while they were executing the warrant and to avoid giving [Vargas] the opportunity to destroy evidence. Furthermore, Detective Troy DeShong testified that suspects are detained during the execution of search warrants because weapons and guns are commonly associated with the drug trade and pose a threat to officer safety during those drug investigations. Detective Deshong also testified that it is helpful to have the suspect present in order to avoid the destruction of evidence, to prevent flight, to limit the destruction of the suspect's personal property during the search and because suspects will often show detectives where the drugs are located, thereby preventing the dangers posed to officers by the presence of Fentanyl in heroin.
>
> Eventually, Detectives observed [Vargas] park a burgundy Ford Explorer directly across the street from the front of his residence in a parking stall. After [Vargas'] vehicle was parked, a female passenger got out and proceeded to walk towards the residence. At that point, uniformed Detectives surrounded [Vargas] and instructed him to get on the ground. Detective Deshong testified that he detained [Vargas] for the execution of the search warrant for officer safety, to prevent the destruction of evidence and to prevent flight. After [Vargas] got onto the ground, Detective Deshong advised [him] of the search warrant and, for purposes of officer safety, initiated a pat-down and asked [Vargas] if he had anything that Detective DeShong should now about on his person. In response, [Vargas] stated that he had two (2) bundles of heroin in his pocket. After the drugs were located on [Vargas'] person, he was

arrested, placed [] in handcuffs and walked to his residence for the execution of the search warrant.

Detective Zimmerman read [Vargas] the service portion of the search warrant and the *Miranda* warnings inside of his residence. The [*Miranda*] warnings were read from a preprinted card and [Vargas] indicated that he understood his rights. Subsequently, he told Detective Zimmerman where the drugs were located, provided access to the safe where they were kept and admitted that the items found belonged to him. After the drugs, a handgun and drug paraphernalia were located, [Vargas] was taken to the Lancaster City Drug [Task] Force Officer at the Lancaster City Police Station. Detective Zimmerman testified that if [Vargas] had not already been under arrest, that he would have been placed under arrest at that time.

[Vargas'] vehicle was seized after the execution of the search warrant as an asset seizure and was driven to the Lancaster City Police Station. Detective Zimmerman obtained [Vargas'] basic information, read him the *Miranda* warnings for a second time and then proceeded to question [Vargas]. At some point while [Vargas] was in the Lancaster City Police Station, Detective Ryan Kelly requested that [Vargas] consent to a search of his vehicle. [Vargas] consented to the search and signed a written consent form. An additional amount of heroin was found within [Vargas'] vehicle during that search.

PCRA Court Opinion, 4/19/18, at 3-5 (footnotes omitted).

Ultimately, the Commonwealth charged Vargas with various drug-related charges. Vargas' counsel filed a motion seeking to suppress evidence on the basis that the search warrant and Vargas' arrest were illegal and that Vargas' *Miranda*[1] rights were violated. The trial court held a suppression hearing on January 5, 2017. At that time, Vargas' counsel eventually

---

[1] *Miranda v. Arizona*, 384 U.S. 436 (1966).

abandoned the claim that Vargas' arrest was illegal and that his ***Miranda*** rights were violated, and proceeded only with the claim that the search warrant was not properly supported by probable cause. Before the trial court issued its decision on the suppression issue, Vargas entered an open guilty plea to all of the charges on February 10, 2017. On April 26, 2017, the trial court imposed an aggregate term of 6¼ to 16 years of imprisonment, and a consecutive one-year probationary term. Vargas filed neither post sentence motions nor a direct appeal.

On August 10, 2017, Vargas filed a *pro se* PCRA petition. The PCRA court appointed counsel, and PCRA counsel filed an amended petition on October 6, 2017. Both Vargas and trial counsel testified at an evidentiary hearing held on December 18, 2017. By order entered April 19, 2018, the PCRA court dismissed Vargas' amended petition. This *pro se* appeal followed.[2] Both Vargas and the PCRA court have complied with Pa.R.A.P. 1925.

Vargas raises the following issues in his *pro se* brief:

> 1. Whether the PCRA court erred as a matter of law and/or abused its discretion in denying Vargas PCRA relief on his claim that his trial counsel was ineffective for advising him to plead guilty prior to addressing meritorious claims for suppression of evidence and prior to the trial court issuing an opinion and/or ruling on the merits of the suppression claims which trial counsel raised?

---

[2] The PCRA court granted Vargas' motion to waive counsel and proceed *pro se* following a hearing pursuant to ***Commonwealth v. Grazier***, 713 A.2d 81 (Pa. 1998).

2. Whether the PCRA court erred as a matter of law and/or abused its discretion in denying without a hearing Vargas' motion for change of appointed PCRA counsel based upon PCRA counsel's ineffectiveness in failing to identify, present and litigate a meritorious claim that Vargas' trial counsel was ineffective for failing to identify and discuss with Vargas the propriety of challenging the warrantless search of a safe as located in Vargas' residence prior to advising Vargas to plead guilty?

**See** Vargas' Brief at 4.

Our standard of review from the denial of post-conviction relief "is limited to examining whether the court's determination is supported by the evidence of record and whether it is free of legal error." **Commonwealth v. Ousley**, 21 A.3d 1238, 1242 (Pa. Super. 2011)(citation omitted).

Vargas' first claim alleges the ineffective assistance of counsel in relation to the entry of his guilty plea. As this Court has summarized:

A criminal defendant has the right to effective counsel during a plea process as well as during trial. A defendant is permitted to withdraw his guilty plea under the PCRA if ineffective assistance caused the defendant to enter an involuntary plea[.]

We conduct our review of such a claim in accordance with the three-pronged ineffectiveness test under section 9543(a)(2)(ii) of the PCRA. The voluntariness of the plea depends on whether counsel's advice was within the range of competence demanded of attorneys in criminal cases.

**Commonwealth v. Orlando**, 156 A.3d 1274, 1280 (Pa. Super. 2017) (citations omitted).

To obtain relief under the PCRA premised on a claim that counsel was ineffective, a petitioner must establish by a preponderance of the evidence

that counsel's ineffectiveness so undermined the truth determining process that no reliable adjudication of guilt or innocence could have taken place. **Commonwealth v. Johnson**, 966 A.2d 523, 532 (Pa. 2009). "Generally, counsel's performance is presumed to be constitutionally adequate, and counsel will only be deemed ineffective upon a sufficient showing by the petitioner." **Id.** This requires the petitioner to demonstrate that: (1) the underlying claim is of arguable merit; (2) counsel had no reasonable strategic basis for his or her action or inaction; and (3) petitioner was prejudiced by counsel's act or omission. **Id.** at 533. A finding of "prejudice" requires the petitioner to show "that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." **Id.**

The failure to file a suppression motion under some circumstances may be evidence of the ineffective assistance of counsel. However, if the grounds underpinning that motion are without merit, counsel will not be deemed ineffective for failing to so move. The defendant must establish that there was no reasonable basis for not pursuing the suppression claim and that if the evidence had been suppressed, there is a reasonable probability that the verdict would have been more favorable. **Commonwealth v. Watley**, 153 A.3d 1034, 1044 (Pa. Super. 2016). Here, trial counsel did file a suppression motion but, as she testified at the evidentiary hearing, she abandoned certain claims following her additional research. **See** N.T., 12/18/17, at 7-8.

Vargas has failed to meet his burden. After careful review, we conclude that the Honorable Howard F. Knisely has prepared thorough and well-reasoned opinions that aptly demonstrate why Vargas' ineffectiveness claims lack merit. *See* PCRA Court Opinion, 4/18/18, at 7-10; Pa.R.A.P. 1925(a) Opinion, 6/14/18, at 5. We therefore adopt Judge Knisely's opinions as our own in disposing of the present appeal.[3] The parties are directed to attach a copy of these opinions to this memorandum in the event of future proceedings.

Order affirmed.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary

Date: 06/04/2019

---

[3] Although Judge Knisely does directly address Vargas' claim of PCRA ineffectiveness regarding the search of the safe, given his correct conclusion that the underlying suppression claim was meritless, Vargas' PCRA ineffectiveness claim fails. *See Commonwealth v. Loner*, 836 A.2d 125, 132 (Pa. Super. 2003) (*en banc*) (explaining that counsel cannot be deemed ineffective for failing to pursue a meritless claim).

- 8 -

IN THE COURT OF COMMON PLEAS OF LANCASTER COUNTY, PENNSYLVANIA
CRIMINAL DIVISION

COMMONWEALTH OF PENNSYLVANIA        :
                                    :
vs.                                 :        No. 1281-2016
                                    :
RICARDO VARGAS, JR.                 :

## OPINION

BY: KNISELY, J.                                      April 19, 2018

Before the Court is Defendant, Ricardo Vargas, Jr.'s petition filed pursuant to the Post Conviction Relief Act ("PCRA").[1] Defendant filed his *pro se* petition on or about August 1, 2017. Counsel was appointed and filed an amended petition on October 6, 2017. A hearing was held on December 18, 2017. At issue before the Court is the effectiveness of Defendant's trial counsel in failing to challenge Defendant's detention and arrest and the search of Defendant's vehicle. Based upon the following, the Court will deny Defendant's petition.

### FACTUAL AND PROCEDURAL BACKGROUND

The investigation in this matter began in February 2016 based on information from a confidential informant identified as "CI #1."[2] CI #1 informed Detective Jesse Zimmerman that a man named "Rick" was in the business of selling heroin from his residence at 45 S. Marshall Street in Lancaster City and that he/she had personally purchased heroin directly from "Rick" at his residence as recently as February 2016.[3] CI #1 provided a physical description of "Rick" and pointed out "Rick's" residence and a burgundy Ford Explorer bearing Pennsylvania registration

---

[1] 42 Pa.C.S.A. §§ 9541-9546.
[2] Affidavit of Probable Cause at paragraph 3.
[3] Affidavit of Probable Cause at paragraph 3.

JZS-7097 that he knew "Rick" to drive.[4] Detective Zimmerman completed a PennDot registration check of JZS-7097 and discovered that the burgundy Ford Explorer was owned by Defendant, Ricardo Vargas, Jr.[5] Detective Zimmerman also obtained a photograph of Defendant from PennDot and CI #1 positively identified the photograph of Defendant as the person he/she knows as "Rick."[6]

CI #1 had previously provided reliable information to police that led to at least one arrest and conviction for a felony violation of the Pennsylvania Substance, Drug, Device, and Cosmetic Act.[7] CI #1 also expressed knowledge of controlled substances, including the pricing, packaging and terminology associated with the sale of heroin.[8] Using CI #1, the Lancaster County Drug Task Force conducted two (2) separate controlled purchases of cocaine from Defendant at his residence.[9] During both of the controlled purchases, CI #1 was provided with Drug Task Force/DA funds, was searched for contraband prior to the purchase with negative results, was observed walking to and from Defendant's residence, upon return, turned over a quantity of heroin reportedly purchased from Defendant and reported observing additional quantities of heroin within the residence for the purpose of future sales.[10]

During the month of March 2016, Detective Zimmerman conducted surveillance at 45 S. Marshall Street and observed Defendant exit and enter the residence on several occasions and also observed various individuals enter and exit the residence for short periods of time.[11] Detective Zimmerman states that his training and experience demonstrate that such activity is indicative of

---

[4] Affidavit of Probable Cause at paragraph 3.
[5] Affidavit of Probable Cause at paragraph 4.
[6] Affidavit of Probable Cause at paragraph 4.
[7] Affidavit of Probable Cause at paragraph 3.
[8] Affidavit of Probable Cause at paragraph 3.
[9] N.T. Pre-Trial Hearing, 01/05/17, p. 9; Affidavit of Probable Cause at paragraph 5, 8.
[10] Affidavit of Probable Cause at paragraph 5, 8.
[11] Affidavit of Probable Cause at paragraph 6.

drug dealing.[12] Detective Zimmerman states that his training and experience demonstrate that possessors and sellers of illegal drugs are known to maintain certain items related to their criminal activity within their residence, including: firearms or other weapons for securing drugs and proceeds; books, records, receipts, notes and ledgers for accounting; and paraphernalia for cutting, packaging, weighing and distributing the illegal drugs.[13] Detective Zimmerman obtained a criminal history for Defendant, which revealed that on January 13, 2011, Defendant pled guilty to a felony violation of the PA Controlled Substance, Drug, Device and Cosmetic Act and was sentenced to two (2) to four (4) years of incarceration and two (2) years of probation.[14]

As a result of his investigation, Detective Zimmerman applied for and obtained a search warrant on March 4, 2016 to search Defendant's residence.[15] The Lancaster County Drug Task Force executed the warrant on March 4, 2016.[16] Prior to executing the search warrant, detectives conducted surveillance and waited until Defendant was present at the residence to execute the search warrant.[17] Detective Zimmerman testified that the purpose of waiting for Defendant to be present was to make sure Defendant did not arrive while they were executing the warrant and to avoid giving Defendant the opportunity to destroy evidence.[18] Furthermore, Detective Troy DeShong testified that suspects are detained during the execution of search warrants because weapons and guns are commonly associated with the drug trade and pose a threat to officer safety during those drug investigations.[19] Detective DeShong also testified that it is helpful to have the suspect present in order to avoid the destruction of evidence, to prevent flight, to limit the

---

[12] Affidavit of Probable Cause at paragraph 6.
[13] Affidavit of Probable Cause at paragraph 1(a-g).
[14] Affidavit of Probable Cause at paragraph 7.
[15] N.T. Pre-Trial Hearing, 01/05/17, pp. 8-9; Affidavit of Probable Cause at paragraph 9; Search Warrant and Affidavit of Probable Cause, 03/04/16.
[16]
[17] N.T. Pre-Trial Hearing, 01/05/17, p. 5; N.T. PCRA Hearing, 12/18/17, pp. 48,
[18] N.T. PCRA Hearing, 12/18/17, p. 48.
[19] N.T. PCRA Hearing, 12/18/17, p. 30.

3

destruction of the suspect's personal property during the search and because suspects will often show detectives where the drugs are located, thereby preventing the dangers posed to officers by the presence of Fentanyl in heroin.[20]

Eventually, Detectives observed Defendant park a burgundy Ford Explorer directly across the street from the front of his residence in a parking stall.[21] After Defendant's vehicle was parked, a female passenger got out and proceeded to walk towards the residence.[22] At that point, uniformed Detectives surrounded Defendant and instructed him to get onto the ground.[23] Detective DeShong testified that he detained Defendant for the execution of the search warrant for officer safety, to prevent the destruction of evidence and to prevent flight.[24] After Defendant got onto the ground, Detective DeShong advised Defendant of the search warrant and, for purposes of officer safety, initiated a pat-down and asked Defendant if he had anything that Detective DeShong should know about on his person.[25] In response, Defendant stated that he had two (2) bundles of heroin in his pocket.[26] After the drugs were located on Defendant's person, he was arrested, placed him in handcuffs and walked to his residence for the execution of the search warrant.[27]

Detective Zimmerman read Defendant the service portion of the search warrant and the Miranda[28] warnings inside of his residence.[29] The Miranda warnings were read from a preprinted card and Defendant indicated that he understood his rights.[30] Subsequently, he told Detective Zimmerman where the drugs were located, provided access to the safe where they were kept and

---

[20] N.T. PCRA Hearing, 12/18/17, p. 36.
[21] N.T. Pre-Trial Hearing, 01/05/17, p. 5; N.T. PCRA Hearing, 12/18/17, pp. 28-29, 31
[22] N.T. Pre-Trial Hearing, 01/05/17, p. 5; N.T. PCRA Hearing, 12/18/17, p. 31.
[23] N.T. Pre-Trial Hearing, 01/05/17, pp. 5-6; N.T. PCRA Hearing, 12/18/17, p. 28.
[24] N.T. PCRA Hearing, 12/18/17, pp. 30, 33, 35-36.
[25] N.T. Pre-Trial Hearing, 01/05/17, p. 6; N.T. PCRA Hearing, 12/18/17, pp. 29, 31-32, 33.
[26] N.T. Pre-Trial Hearing, 01/05/17, p. 6; N.T. PCRA Hearing, 12/18/17, p. 32.
[27] N.T. Pre-Trial Hearing, 01/05/17, p. 6; N.T. PCRA Hearing, 12/18/17, pp. 32, 49, 60.
[28] Miranda v. Arizona, 384 U.S. 436 (1966).
[29] N.T. Pre-Trial Hearing, 01/05/17, pp. 6-7; N.T. PCRA Hearing, 12/18/17, pp. 49-50, 57, 61.
[30] N.T. PCRA Hearing, 12/18/17, p. 57.

admitted that the items found belonged to him.[31] After the drugs, a handgun and drug paraphernalia were located, Defendant was taken to the Lancaster City Drug Trask Force Office at the Lancaster City Police Station.[32] Detective Zimmerman testified that if Defendant had not already been under arrest, that he would have been placed under arrest at that time.[33]

Defendant's vehicle was seized after the execution of the search warrant as an asset seizure and was driven to the Lancaster City Police Station.[34] Detective Zimmerman obtained Defendant's basic information, read him the *Miranda* warnings for a second time and then proceeded to question Defendant.[35] At some point while Defendant was in the Lancaster City Police Station, Detective Ryan Kelly requested that Defendant consent to a search of his vehicle.[36] Defendant consented to the search and signed a written consent form.[37] An additional amount of heroin was found within Defendant's vehicle during that search.[38]

Defendant was subsequently charged with possession with intent to deliver heroin (F),[39] possession with intent to deliver cocaine (F),[40] persons not to possess firearms (F2)[41] and possession of drug paraphernalia (M)[42] at the above docket number. Defendant, through counsel, filed a motion seeking to suppress evidence on the basis that the search warrant and Defendant's arrest were illegal and that his Miranda rights were violated.[43] A suppression hearing was held on January 5, 2017. Defendant, through counsel, eventually abandoned the claim that his arrest was

---

[31] N.T. PCRA Hearing, 12/18/17, pp. 57-58, 61.
[32] N.T. PCRA Hearing, 12/18/17, pp. 53, 58, 61.
[33] N.T. PCRA Hearing, 12/18/17, p. 58.
[34] N.T. PCRA Hearing, 12/18/17, pp. 40-41, 44, 54, 59, 61.
[35] N.T. PCRA Hearing, 12/18/17, pp. 54-55, 61.
[36] N.T. PCRA Hearing, 12/18/17, pp. 38-39, 53, 61-63, 64.
[37] N.T. PCRA Hearing, 12/18/17, p. 41-44, 53.
[38] N.T. PCRA Hearing, 12/18/17, p. 44.
[39] 35 P.S. § 780-113(a)(30).
[40] 35 P.S. § 780-113(a)(30).
[41] 18 Pa.C.S.A. § 6015(a)(1).
[42] 35 P.S. § 780-113(a)(32).
[43] See, Omnibus Pre-Trial Motion, 09/01/16, II. Motion to Suppress Evidence.

illegal and that his Miranda rights were violated and proceeded only with the claim that the search warrant was not properly supported by probable cause.[44] However, prior to a decision on the suppression issue, Defendant, on the advice of counsel, entered an open guilty plea to all charges on February 10, 2017.[45] Following a presentence investigation, Defendant was sentenced on April 26, 2017 to an aggregate term of six (6) years and three (3) months to sixteen (16) years of incarceration and one (1) year of probation.[46] Defendant did not file any post sentence motions or a direct appeal. Defendant was represented by former Assistant Public Defender, Kathleen M. Morrison from his preliminary hearing through his sentencing.[47]

## DISCUSSION

It should initially be noted that the entry of a guilty plea constitutes a waiver of all defects and defenses except those pertaining to jurisdiction, validity of the plea, and legality of the sentence. *Com. v. Main*, 6 A.3d 1026, 1028 (Pa.Super. 2010). During the plea process, a criminal defendant has the right to effective assistance of counsel. *Com. v. Rathfon*, 899 A.2d 365, 369 (Pa.Super. 2006). Allegations of ineffectiveness relating to the entry of a guilty plea will warrant relief only if the ineffectiveness caused the defendant to enter an involuntary or unknowing plea. *Com. v. Hickman*, 799 A.2d 136, 141 (Pa.Super. 2002). That is, such a claim will provide a basis for relief only:

> if the ineffectiveness caused an involuntary or unknowing plea. This is similar to the 'manifest injustice' standard applicable to all post-sentence attempts to withdraw a guilty plea. The law does not require that the appellant be pleased with the outcome of his decision to enter a plea of guilty. All that must be shown is that the appellant's decision to plead guilty be knowing, voluntary and intelligently made.

---

[44] N.T. Pre-Trial Hearing, 01/05/17, pp. 3-4; N.T. PCRA Hearing, 12/18/17, pp. 7-8.
[45] N.T. Guilty Plea, 02/10/17; N.T. PCRA Hearing, 12/18/17, pp. 10-11, 13, 64.
[46] N.T. Sentencing, 04/26/17, p. 13; N.T. PCRA Hearing, 12/18/17, p. 46.
[47] N.T. PCRA Hearing, 12/18/17, pp. 3-4, 5-7, 13-14.

*Com. v. Diaz*, 913 A.2d 871, 872 (Pa.Super. 2006)(citing *Com. v. Lewis*, 708 A.2d 497, 500-01 (Pa.Super. 1998)). "Where the defendant enters his plea on the advice of counsel, the voluntariness of the plea depends on whether counsel's advice was within the range of competence demanded of attorneys in criminal cases." *Id.*

It is well-established that counsel is presumed effective. *Strickland v. Washington*, 466 U.S. 668, 689 (1984). A PCRA petitioner bears the burden of rebutting that presumption by demonstrating that counsel's performance was deficient and that such deficiency prejudiced him. *Id.* The Pennsylvania Supreme Court divided the Strickland standard into a three-prong test requiring a defendant to demonstrate: (1) that the underlying claim has arguable merit; (2) that counsel's actions lack an objective reasonable basis; and (3) that the defendant was prejudiced by counsel's act or omission. *Com. v. Koehler*, 36 A.3d 121, 132 (Pa. 2012). Prejudice in the context of ineffective assistance of counsel requires a demonstration that there was a reasonable probability that but for counsel's error; the outcome of the proceeding would have been different. *Com. v. Kimball*, 724 A.2d 326, 331 (Pa. 1999).

In the instant case, Defendant claims that his trial counsel was ineffective in failing to properly challenge his arrest and the search of his vehicle as fruit of an illegal arrest. Defendant argues that a proper challenge would have resulted in the suppression of the drugs found on his person and in his vehicle, which, in turn, would have resulted in a lower offense gravity score. Defendant claims that he would not have pled guilty if he would have known suppression was a possibility and that he may have faced a lower offense gravity score. Because the Court finds that Defendant's claims lack arguable merit, Defendant failed to establish that his trial counsel was ineffective.

7

It is well-settled that police may detain an occupant of premises being searched for contraband pursuant to a valid warrant, particularly if the occupant being detained is named as a suspect in the affidavit of probable cause supporting the warrant. *Michigan v. Summers*, 452 U.S. 692, 699–702, (1981); *Com. v. Martinez*, 649 A.2d 143, 147 (Pa.Super. 1994); *Com. v. Reicherter*, 463 A.2d 1183, 1184–85 (Pa.Super. 1983). Legitimate justification for the detention includes law enforcement's interest in securing the premises for purposes of officer safety, preventing flight, the orderly completion of the search, including the minimization of harm to the personal property of the occupants, and preventing the destruction of evidence. *See, Michigan v. Summers*, 452 U.S. at 702-03; *Com. v. Stackfield*, 651 A.2d 558, 550 (Pa.Super. 1994). Particular emphasis has been placed on the recognition that, even where the facts of a case don't suggest a specific danger to law enforcement, "the execution of a warrant to search for narcotics is the kind of transaction that may give rise to sudden violence or frantic efforts to conceal or destroy evidence." *Michigan v. Summers*, 452 U.S. at 702-03. "The risk of harm to both the police and the occupants is minimized if the officers routinely exercise unquestioned command of the situation." *Id.* It is also "beyond question that a police officer has a narrowly drawn authority to conduct a reasonable search for weapons, or a protective pat-down, where, as here, the officer reasonably believes that criminal activity is afoot…and that the suspect may be armed and dangerous." *Com. v. Stackfield*, 651 A.2d at 560. *See also, Com. v. Fitzpatrick*, 666 A.2d 323, 325-26 (Pa.Super. 1995) (finding a pat-down search lawful where the person searched had just arrived at a location where law enforcement was intending to execute a search for drugs). Our courts have specifically held "that when a police officer is confronted with an individual who the officer reasonably believes to be involved in narcotics traffic, a Terry pat-down frisk for the protection of the officer is proper" and have taken

8

judicial notice that drug dealers are likely to be armed and dangerous. *Com. v. Fitzpatrick*, 666 A.2d at 326 (citing *Com. v. Patterson*, 591 A.2d 1075, 1078-79 (Pa.Super. 1991)).

The authority to detain suspect occupants applies not only to those found within the residence, but to those in the immediate vicinity. *See, Michigan v. Summers*, 452 U.S. at 702, n. 16 (finding it constitutionally insignificant that the detained suspect was found leaving the residence); *Com. v. Reicherter*, 463 A.2d at 1185 (finding that a suspect occupant found several blocks from the residence to be searched could be detained and transported back to the residence); *Bailey v. United States*, 568 U.S. 186, 195 (2013) (noting that the authority to detain occupants found within the immediate vicinity of the residence to be searched enables law enforcement to avoid occupants who are able to observe the execution of the search from becoming disruptive or dangerous). Furthermore, the Supreme Court of the United States has stated that the very existence of a search warrant provides law enforcement with an objective and articulable justification for the detention of those connected to the premises since it is obtained only after "[a] judicial officer has determined that police have probable cause to believe that someone in the home is committing a crime." *Michigan v. Summers*, 452 U.S. at 703-04. It is the "[t]he connection of an occupant to that home [that] gives the police officer an easily identifiable and certain basis for determining that suspicion of criminal activity justifies a detention of that occupant." *Id*. Such detentions are "only an incremental intrusion on personal liberty when the search of a home has been authorized by a valid warrant." *Id*.

If suspects found leaving or even several blocks away from a property to be searched may reasonably be detained, it would follow that an occupant returning to the property and parked directly in front of it may also be detained. In the instant case, Defendant was not detained miles away, but directly in front of and within eyesight of his residence, which was about to be searched.

9

He would have clearly been able to observe the execution of the search on his residence and it was within the authority of the officers to make sure the premises were secure and the possibility of any sudden violence or frantic efforts to conceal or destroy evidence. Furthermore, Defendant was specifically named as the occupant and suspect in the affidavit of probable cause supporting the search warrant.[48] A neutral and detached magistrate had found probable cause to believe that the law was being violated in that house and had authorized a substantial invasion of Defendant's privacy there. Therefore, the detention of Defendant is analogous with the cases holding that the subject of a search warrant may be detained if they are within the residence to be searched or within the immediate vicinity. The Detectives' justifications for verifying Defendant's location, ensuring his presence and temporarily detaining and frisking Defendant at the time of the execution of the search warrant were legitimate and reasonable under the facts of this case. The detention of Defendant, although a significant restraint on his liberty, was far less intrusive than the search itself. Therefore, Defendant's detention, frisk and subsequent arrest were lawful and the search of his vehicle by consent was not the fruit of an illegal arrest.[49]

Accordingly, the Court enters the following:

---

[48] As noted by the Commonwealth, there is also the probability Defendant could have been lawfully detained based upon the felony drug deliveries that were the probable cause buys for the search warrant. An exception to the warrant requirement for arrests in public places includes where the arresting officer has probable cause to believe that a felony has been committed and that the person to be arrested is the felon. *Com. v. Martin*, 101 A.3d 706, 721 (Pa. 2014). See, also, Pa.R.Crim.P. 502(2)(b)

[49] Defendant also appears to argue that he may have been subject to custodial interrogation prior to being mirandized. However, even if Defendant's initial detention did reach the level of an arrest, Defendant was not subjected to custodial interrogation and the drugs on his person would have inevitably been discovered pursuant to a search incident to arrest following the execution of the search warrant. The facts of this case make clear that any unlawful arrest of Defendant was neither purposeful nor flagrant, but the result of an effort to properly detain him for the purpose of securing the premises for the execution of the search warrant. *See, Com. v. Martinez*, 649 A.2d at 147–48. Additionally, the question posed to Defendant during the frisk was for the sole purpose of officer safety and not to obtain incriminating statements from Defendant. Even if they were, Defendant was lawfully subject to detention during the execution of the search warrant and, therefore, the drugs on Defendant's person would have inevitably been discovered during a search incident to arrest following the execution of the search warrant and the discovery of the drugs. *See, Com. v. Gonzalez*, 979 A.2d 879, 890 (Pa.Super. 2009) (holding that evidence that ultimately or inevitably would have been recovered by lawful means should not be suppressed even though its actual recovery was accomplished through illegal actions). Furthermore, Defendant gave consent to search his vehicle after being properly mirandized and said consent lacked any indication of being involuntary or coerced.

10

IN THE COURT OF COMMON PLEAS OF LANCASTER COUNTY, PENNSYLVANIA
CRIMINAL DIVISION

COMMONWEALTH OF PENNSYLVANIA   :
                                         :

vs.                                        :    No. 1281-2016
                                         :

RICARDO VARGAS, JR.                  :

**ORDER**

AND NOW, this 19ᵗʰ day of April 2018, upon consideration of Defendant's Amended

Motion for Post-Conviction Collateral Relief and for the reasons stated in the Court's Opinion of

this day, said Motion is hereby DENIED.

BY THE COURT:

HOWARD F. KNISELY
JUDGE

Attest:
Copies to:

Trista M. Boyd, Assistant District Attorney
Barrie Wellener, Esq.

IN THE COURT OF COMMON PLEAS OF LANCASTER COUNTY, PENNSYLVANIA
CRIMINAL DIVISION

COMMONWEALTH OF PENNSYLVANIA :
                                :
vs.                             :    No. 1281-2016
                                :
RICARDO VARGAS, JR.             :

### OPINION

BY: KNISELY, J.                                        June 14, 2018

Defendant, Ricardo Vargas, Jr., appeals from the April 19, 2018 Order denying

his petition filed pursuant to the Post Conviction Relief Act ("PCRA").[1] The reasons

for the denial of Defendant's PCRA petition are stated within the Opinion attached

to the April 19, 2018 Order and, therefore, said Opinion, including the factual and

procedural background of this matter, is incorporated herein for purposes of

Pa.R.A.P. 1925(a). It should be noted that after the filing of the April 19, 2018

Opinion and Order and after Defendant filed his notice of appeal, Defendant raised

additional issues in two separate sets of correspondence, dated May 13, 2018 and

May 24, 2018, containing purported concise statements of error.[2] Those additional

issues should be deemed waived and, furthermore, do not allege any issues with

---

[1] 42 Pa.C.S.A. §§ 9541-9546.

[2] Defendant was granted permission to proceed *pro se* on May 10, 2018 following a motion to waive counsel and a *Grazier* hearing.

merit.

In his new set of issues, Defendant's main contention is that both his trial counsel and his PCRA counsel were ineffective in failing to seek the disclosure of the Commonwealth's confidential informant and/or challenge the reliability of said informant. First and foremost, the issues concerning the Commonwealth's confidential informant were raised by Defendant's trial counsel in a Pretrial Omnibus Petition filed on September 1, 2016. As such, Defendant was aware of these potential issues prior to choosing to plead guilty. Secondly, trial counsel testified that she ultimately abandoned these issues because she found them to lack merit.[3] Indeed, those issues do lack any merit and do not warrant Defendant PCRA relief.

Under Pennsylvania Rule of Criminal Procedure 573, a trial court has the discretion to require the Commonwealth to reveal the names and addresses of all eyewitnesses, including confidential informants, where a defendant makes a showing of material need and reasonableness. Pa.R.Crim.P. 573(B)(2)(a)(i). The Commonwealth enjoys a qualified privilege to withhold the identity of a confidential source unless and until a defendant establishes that the identity of the informant is material to the preparation of the defense and reasonable. *Com. v. Watson*, 69 A.3d 605, 607–08 (Pa.Super. 2013). Even if the defendant shows that the identity of the

---

[3] N.T. PCRA Hearing, 12/18/17, pp. 7-11.

confidential informant is material to the defense, the trial court must still exercise "its discretion to determine whether the information should be revealed by balancing relevant factors, which are initially weighted toward the Commonwealth." *Id.* The balance that must be struck is "the public interest in protecting the flow of information against the individual's right to prepare his defense." *Id.* Factors that must be considered include, but are not limited to, the crime(s) charged, possible defenses, the relevancy of the information, whether the information may be helpful to Defendant, whether the informant was an eyewitness to the crimes charged and whether the information is essential to a fair determination. *Id.*; *Com. v. Washington*, 63 A.3d 797, 801 (Pa.Super. 2013). While a defendant "need not predict exactly what the informant will say, he must demonstrate at least a reasonable possibility the informant's testimony would exonerate him." *Com. v. Washington*, 63 A.3d at 801.

In the instant case, Defendant fails to establish or provide a plausible explanation of how disclosure of the identity of the Commonwealth's confidential informant would have benefited him. The confidential informant was not present at the scene where the search warrant was executed and Defendant was stopped and searched. Therefore, the confidential informant was not present when the crimes that were charged were uncovered and is not an eyewitness. The confidential informant was also not involved in the crimes that are being charged, as in the more common situation, where the confidential informant is directly participating in a controlled

3

buy. Defendant was caught by police in the act and his only charges involve the drugs found by police on his person, the drugs and gun discovered in his home pursuant to the search warrant and the drugs found within his vehicle pursuant to Defendant's consent to a search of said vehicle.

Challenging the reliability of the confidential information would have also proved futile for Defendant. It has previously been held that information from an informant may constitute probable cause for purposes of issuing a search warrant where police independently corroborate the tip, where the informant has provided accurate information of criminal activity in the past or where the informant himself participated in the criminal activity. *Com. v. Gagliardi*, 128 A.3d 790, 795–96 (Pa.Super. 2015). Probable cause exists where the facts and circumstances within the affiant's knowledge and of which he has reasonably trustworthy information are sufficient in themselves to warrant a man of reasonable caution in the belief that a search should be conducted. *Id.* In the instant case, the March 4, 2016 search warrant and supporting affidavit of probable cause specifically state the source of the confidential informant's information, that he had personally and recently purchased heroin directly from Defendant at his home. Affidavit of Probable Cause at paragraph 3. Furthermore, it specifically states that the confidential informant has previously provided reliable information to police that led to at least one arrest and conviction for a felony violation of the Pennsylvania Substance, Drug, Device and

4

Cosmetic Act and expressed knowledge of controlled substances, including the pricing, packaging and terminology associated with the sale of heroin. *Id.* Police were also able to corroborate some of the information provided by the confidential informant by verification of Defendant's identity, his connection with the residence and his ownership of the described vehicle, and through several controlled buys from Defendant at his residence utilizing the confidential informant. *Id.* at 3-8. Therefore, there was no basis to challenge the reliability of the confidential information or the search warrant.

Defendant's last issue involves the search of the safe within his residence where the drugs and gun were discovered. It has been specifically held that "[w]here a search warrant adequately describes the place to be searched and the items to be seized the scope of the search extends to the entire area in which the object of the search may be found and properly includes the opening and inspection of containers and other receptacles where the object may be secreted." *Com. v. Irvin*, 134 A.3d 67, 75 (Pa.Super. 2016) (citing *Com. v. Waltson*, 724 A.2d 289, 292 (Pa. 1998)). The search warrant in this matter authorized a search of Defendant's residence for drugs. Therefore, the safe, located within Defendant's residence, was within the fair scope of the search warrant in that it was a container in which the contraband may have been secreted.

5

For all of the foregoing reasons, Defendant is not entitled to PCRA relief and the April 19, 2018 Order should not be disturbed.

BY THE COURT:

HOWARD F. KNISELY
JUDGE

Attest:
Copies to:

Amara M. Riley, Assistant District Attorney

Ricardo Vargas, Jr., MY6082, SCI Huntingdon, 1100 Pike Street, Huntingdon, PA 16654 (Via Certified Mail, Return Receipt Requested)

CLERK OF COURTS
2018 JUN 14 PM 2: 41
LANCASTER COUNTY, PA

6